95 Pa. Commonwealth Ct. 132 (1986)
504 A.2d 437
Allegheny County Deputy Sheriff's Association, Petitioner
v.
Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, and County of Allegheny, Respondents.
No. 20 T.D. 1983.
Commonwealth Court of Pennsylvania.
Argued March 13, 1985.
February 12, 1986.
Argued March 13, 1985, before President Judge CRUMLISH, JR., Judges CRAIG, MacPHAIL, DOYLE, BARRY, COLINS and PALLADINO.
*133 Arthur Cutruzzula, Balzarini, Carey & Maurizi, for petitioner.
James L. Crawford, with him, Ellis H. Katz, for respondent, Pennsylvania Labor Relations Board.
Ira Weiss, Deputy County Solicitor, with him, James L. McLean, County Solicitor, for respondent, County of Allegheny.
OPINION BY PRESIDENT JUDGE CRUMLISH, JR., Februare 12, 1986:
The Allegheny County Deputy Sheriff's Association (Association) petitioned for investigation and certification of representatives under the Act of June 24, 1968 (Act 111).[1] The Pennsylvania Labor Relations Board (Board) dismissed this petition. The Association appeals;[2] we affirm.
The Association's bargaining unit is comprised of approximately 102 members: thirteen sergeants, five plainclothes detectives and eighty-four uniformed deputies. Presently, they are certified for collective bargaining purposes under the Public Employe Relations Act (Act 195).[3] The present petition seeks certifications *134 under Act 111, which governs collective bargaining between policemen and firemen and their public employers.[4]
We must determine whether any changes have occurred since our decision in Venneri v. County of Allegheny, 12 Pa. Commonwealth Ct. 517, 316 A.2d 120 (1974) (Venneri II), which would alter our conclusion there that the deputy sheriffs are not policemen for purposes of Act 111.[5] In Venneri II we held that, although the deputy sheriffs' duties encompassed many activities normally performed by police, their primary duties were directly related to the operation of the Allegheny County courts. Id.
The sheriff's office has continued to perform the same police-type functions. These include plainclothes investigatory work; patrol of the County's public transit system; replacing absent police officers to augment the police force; and providing security for V.I.P.'s in Allegheny County. However, the record also indicates that the deputy sheriffs have maintained their traditional status as an arm of the Allegheny County judicial system, implementing various court-related processes.[6]
*135 Since Venneri II the only other duties have involved the institution of public safety programs,[7] undercover work with a drug enforcement task force connected with the Federal Drug Enforcement Administration for approximately four years[8] and undercover work with a related homicide investigative unit.[9] We hold that these new responsibilities are not sufficient in either quality or quantity to justify a conclusion that the deputy sheriffs' status rises to the level of police under Act 111.
We reject the Association's alternative argument that the legislature has in the interim granted general police powers to deputy sheriffs. In particular, it notes Section 10(a) of the Second Class County Code (Code),[10] which provides that a deputy sheriff can be "reduced in rank, suspended, furloughed or discharged. . . [for] conduct unbecoming a police officer. . . ." (Emphasis added.) It is well-settled that "[w]hen vesting a group with police powers and duties, the Legislature does so with specificity." Commonwealth v. Pennsylvania Labor Relations Board, 64 Pa. Commonwealth Ct. 525, 532, 441 A.2d 470, 475 (1982); aff'd in part, rev'd in part, Commonwealth v. Pennsylvania Labor Relations Board, 502 Pa. 7, 463 A.2d 409 (1983). The deputy sheriffs are not specifically vested with police powers and Section 10(a) does not provide this authority. Sections 7[11] and 14[12] of the *136 Code merely reaffirm the role of deputy sheriffs as court-related officers who may be called upon for limited police support.[13] Moreover, the deletion of the last sentence in Section 2(b) of House Bill No. 101, which stated that "all reference to the police force shall be deemed to include the force of deputy sheriffs,"[14] clearly indicates that the legislature chose to distinguish deputy sheriffs from policemen.
We reaffirm our decision in Venneri II and conclude that no substantial change has occurred in the duties of the deputy sheriffs since that decision. We hold that they are still essentially court-related personnel and not policemen within the meaning of Act 111.[15]
*137 The order of the Pennsylvania Labor Relations Board is affirmed.

ORDER
The order of the Pennsylvania Labor Relations Board, No. PF-R-81-68-W, dated December 1, 1982, is affirmed.
Judge BARRY did not participate in the decision in this case.
NOTES
[1] P.L. 237, as amended, 43 P.S. §§217.1-.27.
[2] An appeal of the Pennsylvania Labor Relations Board order was taken to the Allegheny County Common Pleas Court, which was subsequently transferred to this Court on the grounds that any conclusion concerning the applicability of Act 111 reached by the PLRB is reviewable only by the Commonwealth Court.
[3] Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §§1101.101-.2301. (Act 195).
[4] Act 111 forbids strikes by policemen and firemen and calls for binding arbitration when a dispute reaches an impasse or stalemate. Act 195 expressly excludes all employees covered by Act 111, permits strikes under certain circumstances and does not mandate binding arbitration.
[5] Our scope of review is limited to determining whether the Board's findings are supported by substantially and legally credible evidence, and whether its conclusions are reasonable and not capricious, illegal or arbitrary. Commonwealth v. Pennsylvania Labor Relations Board, 64 Pa. Commonwealth Ct. 525, 441 A.2d 470 (1982).
[6] The deputy sheriffs continue to serve summons, writs and court orders, maintain peace in the courtroom, transfer prisoners, notify jurors and enforce bench warrants.
[7] These safety programs include: bicycle safety for children, hunter safety, and self-defense classes for adults.
[8] The Association no longer performs this function.
[9] A narcotics task force was established in 1977 to assist the Pittsburgh Police Department's investigation of a series of murders.
[10] Act of July 28, 1953, P.L. 723, as amended, 16 P.S. §4221.10 (a).
[11] Section 7, 16 P.S. §4221.7, provides for provisional appointments of deputy sheriffs in urgent situations and states:

Nothing herein contained shall prevent the appointment of deputy sheriffs without examination to act in emergency cases, for the suppression of riots, breaches of the peace, tumults, in times of war, pestilence, conflagration, or public celebration.
[12] Section 14, 16 P.S. §4221.14, provides in pertinent part:

Every member of the force of deputy sheriffs shall have at least twenty-four consecutive hours of rest in each calendar week, except in emergency cases for the suppressions of riots or tumults or the preservation of the public peace, in times of war, riot, conflagration, or public celebration or whenever the sheriff deems it necessary to maintain good order. No member shall be required to work more than eight consecutive hours in any twenty-four hours except in the aforesaid cases of emergency.
[13] We have held in Venneri II that a similar Code section, 16 P.S. §1210, which prohibits a deputy sheriff or "other county police officer" from performing official services for private persons did not evidence a legislative intent to authorize deputy sheriffs as police officers.
[14] This sentence was omitted when House Bill No. 101 was enacted into law by the 1973 General Assembly as an amendment to the Second Class County Code, Act of July 28, 1953, P.L. 723, as amended, 16 P.S. §§XXXX-XXXX.
[15] The Association also argues that a specific legislative act vesting general police power in the deputy sheriffs is not a sine qua non to a finding of Act 111 police status and that its deputy sheriffs are policemen under common law. We disagree. As discussed in Venneri II and Venneri v. County of Allegheny, 121 P.L.J. 366, 367 (1973), the sheriff possessed the powers of both judge and law enforcement officer at early common law, but the modern office of sheriff is primarily responsible for court-related security.